FREMONT, ELKHORN & MISSOURI VALLEY RAILROAD COMPANY v. GEORGE W. FRENCH.

FILED MAY 20, 1896. No. 6630.

Carriers: INJURY TO PASSENGER: RECOVERY: EVIDENCE. It is only necessary to a right of recovery against a railroad company to show that the person injured was at the time being transported as a passenger over the defendant's line of railroad, and that the injury resulted from the management or operation of such railroad. A presumption thereupon arises that such management or operation was negligent, and can be met, only, by showing that the injury arose from the criminal negligence of the party injured, or that the injury complained of was the result of the violation of some express rule or regulation of such company actually brought to the notice of the person injured.

2. ———: ———: ———.  By the statutes of this state a common carrier is made an insurer of the safety of its passengers, except as against the criminal negligence of such passenger or his violation of some rule of the carrier actually brought to such passenger's notice.  (Compiled Statutes, ch. 72, art. 1, sec. 3.)

3. Review: NUMBER OF WITNESSES.  The credibility of witnesses is for the jury, and this court cannot say that the finding of a jury is not supported by sufficient evidence because a greater number of witnesses testified against the finding than testified in its favor.

4. Carriers: RECOVERY FOR INJURIES: EVIDENCE.  In a suit by a passenger against a common carrier for damages for an injury alleged to have been sustained while such passenger, when the passenger has shown that the defendant is a common carrier, that he was the carrier's passenger, and while such was injured, and the extent of such injury, he has made out his case.  The carrier then, to escape liability, must show that the injury of the passenger was the result of his criminal negligence, or the result of a violation by him of some express rule or regulation of the carrier actually brought to the passenger's notice.

5. Damages: NEGLIGENCE.  The law awards damages to a party injured through the negligence of another, not as a punishment of the negligent party, but as compensation for the pecuniary loss sustained and the pain and suffering endured by the injured party.

6. ———: CARRIERS: INJURY TO PASSENGER: CONTRACTS.  The relation existing between a common carrier and a passenger is a contractual one, the undertaking of the carrier being to safely transport and deliver the passenger at his destination, and the violation of this contract by the carrier entitles the passenger to recover such damages as will fully compensate him for the injury and loss sustained;  but the passenger is not entitled to damages that will put him in a better position than he would have been in had the carrier complied with its contract.

7. ———: ———: ———: REMITTITUR.  The damages awarded a passenger in this case held to be excessive and a remittitur of $1,300 ordered.

ERROR from the district court of Brown county.   Tried below before KINKAID, J.

*John B. Hawley, B. T. White,* and *William B. Sterling,* for plaintiff in error.

*E. F. Gray* and *D. B. Carey, contra.*

RAGAN, C.

George W. French sued the Fremont, Elkhorn & Missouri Valley Railroad Company in the district court of Brown county for damages for an injury which he alleged he had received while a passenger of the railroad company. French had a verdict and judgment and the railroad company prosecutes here a proceeding in error.

1. That the railroad company was a common carrier of passengers for hire, that French was a passenger on one of its trains and while such passenger was injured, there was no dispute on the trial of this case in the court below, nor is there any here. Section 3, article 1, chapter 72, Compiled Statutes, provides: "Every railroad company * * * shall be liable for all damages inflicted upon the person of passengers while being transported over its road, except in cases where the injury done arises from the criminal negligence of the person injured, or when the injury complained of shall be the violation of some express rule or regulation of said road actually brought to his or her notice." This statute was construed in *Missouri P. R. Co. v. Baier*, 37 Neb., 235, and it was there held: "It is only necessary to a right of recovery against a railroad company to show that the person injured was at the time being transported as a passenger over the defendant's line of railroad, and that the injury resulted from the management or operation of said railroad. A presumption thereupon arises that such management or operation was negligent, and it can be met only by showing that the injury arose from the criminal negligence of the party injured, or that the injury complained of was the result of the violation of some express rule or regulation of said railroad company actually brought to the notice of the party injured." This construction of the statute was adhered to in *Union P. R. Co. v. Porter*, 38 Neb., 226, and again in *Chicago, B. & Q. R. Co. v. Landauer*, 39 Neb., 803, and *St. Joseph & G. I. R. Co. v. Hedge*, 44 Neb., 448. The court in construing the statute said: "By the statutes

of this state a common carrier is made an insurer of the safety of its passengers, except as against the gross negligence of such passenger or his violation of some rule of the carrier brought to such passenger's notice." French's injury happened on the 4th day of February, 1891. On that day he was a passenger on the cars of the defendant railroad company from the city of Omaha to the city of Ainsworth, and was injured at the station of his destination. There was no claim in the court below, nor is there any here, that French's injury was the result of his violation of any rule or regulation of the railroad company. The defense of the railroad company interposed in the court below was that as the train on which French was a passenger was moving rapidly in front of the station platform at Ainsworth, French attempted to step or jump from the steps of the coach on which he was riding to the station platform, and fell and was thus injured. It will thus be seen that the railroad company assumed that the act of French in stepping or jumping from the moving train to the platform, if he did so step or jump, was criminal negligence on his part within the meaning of the statute quoted. We do not decide whether this assumption of the railroad company was correct or not. If French jumped or stepped from the moving train to the platform, the act may have been such as to permit of no other inference than that of negligence on his part, as in *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb., 642, 39 Neb., 803, and *Woolsey v. Chicago, B. & Q. R. Co.*, 39 Neb., 798; or the act of French may have been simply evidence which tended to prove negligence on his part, as in *Union P. R. Co. v. Porter*, 38 Neb., 226, *Chicago, B. & Q. R. Co. v. Hyatt*, 48 Neb., 161, and *St. Joseph & G. I. R. Co. v. Hedge*, 44 Neb., 448. But whether the act of French was evidence which merely tended to prove negligence, or demanded an inference of negligence on his part, depended under the peculiar facts and circumstances under which he stepped or leaped from the train. We are not concerned here with the question whether his act was negligence or

45

evidence which tended to prove negligence. The proposition presented to us is the correctness of the finding of the jury that French did not step or jump from the train while in motion. French's theory of the injury was that he did not leave his seat in the car until the train stopped at Ainsworth; that he then went out to the platform of the car and stepped down on the lower step and lifted one foot into the air for the purpose of stepping to the station platform,—the car in the meantime standing still, —and while he was thus in the act of stepping to the platform the train was suddenly jerked forward, throwing him to the ground and partly under the train; and that the train then moved up a short distance and stopped the second time. Some four or five witnesses testified to French's version of the accident, and some fifteen or sixteen witnesses contradicted his version of the accident, more or less directly and positively. Some of the circumstances in the case strongly corroborate French's theory. The first assignment of error argued here is that this finding of the jury in favor of French's theory of the accident is not supported by sufficient evidence. We think it is. We did not hear these witnesses testify; we have had no means of observing them or their demeanor. The credibility of these witnesses was for the jury; and because five witnesses testified directly that a thing did happen, and sixteen witnesses testified, more or less directly, that that thing did not happen, this court cannot say that the jury was wrong in believing the five witnesses instead of the sixteen. (*Omaha Street R. Co. v. Craig*, 39 Neb., 601.) But in addition to this, the learned district judge heard these witnesses testify, and he has put the seal of his approval upon their verdict on this question by overruling the motion for a new trial. This court cannot reverse the finding of the jury because a greater number of witnesses testified against the finding of the jury than testified in favor of its finding. French having shown that the railroad company was a common carrier of passengers for hire, that he was a passenger on one of its trains, and

while such passenger was injured, he had then made out his case; and the railroad company, to escape liability, was under the necessity of showing that the injury for which French sued was the result of his criminal negligence, or the result of a violation by him of some express rule or regulation of the railroad company actually brought to his notice. It was the opinion of the jury that the carrier had not done this, and we cannot say that the conclusion of the jury on that subject was wrong.

2. The next assignment of error which we notice is that the damages awarded French are excessive, and appear to have been given under the influence of passion and prejudice. The judgment in this case is for $6,300. We find nothing in the record which we think justifies us in concluding that the award of damages in this case was the result of passion or prejudice on the part of the jury. But are the damages excessive under the facts in evidence in the case? French when injured was a man twenty-four years of age, in good health. He was a farmer by occupation. The injury consisted of a cut made by the flange of a car wheel in the fleshy part of his heel, and the laceration and bruising of the muscles of his ankle and its being severely strained and twisted. No joints were dislocated and no bones broken. He was in bed some eleven weeks, during which time he suffered more or less pain. From the time he got out of bed until the autumn of the same year he was compelled to use crutches in moving about, and it would seem from the evidence that he lost as the result of the accident about a year's time. The case at bar was tried in November, 1892, and at that time he appears to have been on the high road to getting well, although at that time his ankle was slightly stiff and tender and somewhat sore. He was not permanently injured by the accident, as that term is generally understood; that is, he was not permanently and entirely disabled. He testified that he could not do as much work by about half since his injury as before. His physician testified that his ankle would be more or less weak always,

but in time could be used without pain or other inconvenience except the inconvenience of its stiffness; that the injured parts of his foot had been and were constantly improving and that he might almost entirely recover, and that he presented one of the best of subjects for a cure by reason of his youth and strength. The record contains no evidence showing what French was capable of earning either before or after the injury; nor does the evidence disclose that he suffered any great or excruciating pains for any very considerable time. He incurred an expense of $200 for medical attendance. The law awards damages to a party injured through the negligence of another, not as a punishment of the negligent party, but as compensation for the pecuniary loss sustained and the pain and suffering endured by the injured party. (*Fremont, E. & M. V. R. Co. v. Leslie*, 41 Neb., 159.) The relation existing between French and the railroad company was a contractual one, the contract of the railroad company being to safely carry French from Omaha to Ainsworth and safely deliver him at the latter place. The railroad company violated this contract, and French is entitled to such sum as damages as will fully compensate him for the injury and loss sustained and pain suffered; but he is not entitled to such damages as will put him in a better position than he would have been in had the railroad company not violated its contract. The amount of damages awarded French by the judgment under consideration, if invested at the rate of interest lawful in this state, would yield an annual revenue of $630. We think this amount excessive in view of the evidence. We think that $5,000 will reimburse French for the necessary and reasonable liabilities incurred by him for nursing and doctor's bills, and reimburse him for all time lost or that he will lose by reason of this injury, and amply recompense him for all pain and suffering which he has endured or may endure by reason of the injury. The judgment of the district court is therefore reversed, unless the defendant in error shall, within thirty days from this date, file with

Fremont, E. & M. V. R. Co. v. French.

the clerk of this court a remittitur of $1,300; if such remittitur is filed, the judgment for $5,000 will be affirmed.

JUDGMENT ACCORDINGLY.

IRVINE, C., dissenting.

I cannot concur in the conclusion of the court permitting an affirmance of this judgment on plaintiff's remitting $1,300. Where damages are wholly unliquidated, and necessarily determined on general considerations without definite rules of admeasurement, the jury is the body which should fix them, and verdicts should not be disturbed unless so clearly disproportionate to the injury sustained as to strike the mind as being manifestly excessive. My associates think this judgment to be of this character, and in this I agree with them; but I cannot see by what process they ascertain that $5,000 is reasonable, while $6,300 is so grossly excessive as to call for judicial interference. The difference between the two sums is too small to afford grounds for distinction where, as in this case, every basis of mathematical calculation is absent, and the elements for consideration are of so speculative a nature as mental and physical suffering and bodily inconvenience. I think, measured by verdicts which have been sustained in similar cases, a much larger remittitur should be required, but on a matter so much involved in speculation I would yield my individual opinion to the combined views of the jury, which found a verdict for $10,000, of the trial judge, who reduced it to $6,300, and of my associates, who think $5,000 a proper sum; but, conceding that their views are more nearly right, the difference between the judgment rendered and the estimate of my associates is, in my opinion, too slight to justify any interference with the judgment. Either the judgment is clearly excessive and a substantial remittitur should be required, or it should be affirmed as it stands.

NORVAL, J., concurs in the foregoing dissenting opinion.